## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**CHRISTOPHER PERRE, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 23-439**

**EAST BANK CONSOLIDATED**
**SPECIAL SERVICE FIRE PROTECTION**               **SECTION: D (1)**
**DISTRICT, ET AL.**

### ORDER AND REASONS

Before the Court is a 12(b)(6) Motion to Dismiss Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted filed by the Defendants, East Bank Consolidated Special Service Fire Protection District, Parish of Jefferson, and Jefferson Parish Council (collectively, "Defendants").[1]  Plaintiffs Christopher Perre, Michael Giarrusso, Kevin Crossen, Mitchell Arbaugh, and Brandon Barthel (collectively, "Plaintiffs") oppose the Defendants' Motion.[2]  The Defendants have filed a Reply in support of their Motion.[3]  After careful consideration of the parties' memoranda, the Second Amended Complaint filed by the Plaintiffs, the record, and the applicable law, the Court **GRANTS** the Motion to Dismiss and **DISMISSES with prejudice** Plaintiffs' claims against Defendants East Bank Consolidated Special Service Fire Protection District, Parish of Jefferson, and Jefferson Parish Council.

---

[1] R. Doc. 36.
[2] R. Doc. 39.
[3] R. Doc. 42.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This 42 U.S.C. § 1983 civil rights action concerns the allegedly unlawful collection of the Plaintiffs' fingerprints by the Defendants in violation of the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures. According to their Second Amended Complaint, Plaintiffs—all firefighters and employees of Defendant East Bank Consolidated Special Service Fire Protection District (the "Fire Department") in Jefferson Parish, Louisiana[4]—were told by "higher ranking administrative personnel" to "turn over their fingerprints" to the Fire Department and Defendant Parish of Jefferson for "collection and storage."[5] Plaintiffs allege that they objected to their biometric data "being forcibly taken under distress" and without either probable cause or reasonable suspicion of criminal activity.[6]

In response to this initial opposition from Plaintiffs and other firefighters to the request to turn over their fingerprints, the then-existing Fire Department Fire Chief David Tibbets ordered the Plaintiffs to submit to a fingerprint search without exceptions under "the threat of disciplinary action."[7]  With objection, the Plaintiffs complied with the order and let the Fire Department take their fingerprints.[8]  The Plaintiffs maintain that there was no "special need" for the fingerprint search nor was there any valid basis for the taking of their fingerprints.[9]  The Plaintiffs also

---

[4] R. Doc. 33 at ¶¶ 4, 6, 11.
[5] *Id.* at ¶ 12.
[6] *Id.* at ¶¶ 13, 15–16.
[7] *Id.* at ¶¶ 25–26, 29.
[8] *Id.* at ¶¶ 25, 28, 47–48.
[9] *Id.* at ¶¶ 35, 46.

claim that several administrators in the fire Department exempted themselves from the fingerprinting policy.[10]

According to Plaintiffs, the purported purpose of the Fire Department's collection and storage of fingerprints was for timekeeping purposes[11] following adoption of the "Kronos" timekeeping security system by the Jefferson Parish Council to keep track of when the firefighters clock in and out of work.[12]  Plaintiffs allege that Defendant Jefferson Parish Council approved of and allocated funds to purchase the "Kronos" timekeeping system and fingerprinting equipment and ratified the Fire Department's order to take the firefighters fingerprints.[13]   Nevertheless, the Plaintiffs argue that several alternatives to fingerprinting for timekeeping purposes exist including the use of key cards, PIN codes, and "traditional fire logs . . . kept by the station captain as part of his duties."[14]

Plaintiffs initially filed suit in this Court on February 3, 2023, naming as Defendants East Bank Consolidated Special Service Fire Protection District, Parish of Jefferson, and Jefferson Parish Council, as well as Cynthia Lee Sheng in her official capacity as Jefferson Parish President, Bryan Adams in his official capacity as Fire Chief, and David Tibbets in his official capacity as previous Fire Chief.[15]   The Defendants subsequently filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).[16]  After full briefing and oral argument on the Motion, the Court

---

[10] *Id.* at ¶¶ 27, 29 n.4.
[11] *Id.* at ¶ 33.
[12] *Id.* at ¶¶ 19, 33.
[13] *Id.* at ¶¶ 19–20.
[14] *Id.* at ¶¶ 20, 24, 26, 34, 37–40.
[15] R. Doc. 1.
[16] R. Doc. 17.

granted the Motion, dismissing Plaintiffs' claims against Defendants Cynthia Lee Sheng, Bryan Adams, and David Tibbetts with prejudice as duplicative of the claims against the government entity Defendants and dismissing the claims against Defendants East Bank Consolidated Special Service Fire Protection District, Parish of Jefferson, and Jefferson Parish Council without prejudice for failure to sufficiently plead a *Monell* claim under 42 U.S.C. § 1983.[17]  At the request of the Plaintiffs, the Court granted Plaintiffs leave to amend their Complaint to address the deficiencies identified by the Court.[18]   The Plaintiffs timely filed their Second Amended Complaint against the government entity Defendants.

In Count I of their Second Amended Complaint, the Plaintiffs assert a *Monell* claim under 42 U.S.C. § 1983 against the Defendants, alleging that the Defendants, under color of state law, violated their rights under the Fourth Amendment to be free from unreasonable searches and seizure.[19]  In Count II, the Plaintiffs assert a claim under state law, arguing that the Defendants violated the Plaintiffs' rights guaranteed by Article 1, Section 5 of the Louisiana Constitution of 1974.[20]  Besides the Fire Department, the Plaintiffs also named as Defendants the Parish of Jefferson, as the alleged policymaking authority over the Fire Department and its employees, and Jefferson Parish Council, as the alleged legislative and policy making body of the Fire Department.[21]  As to both counts, the Plaintiffs seek compensatory damages and

---

[17] *See* R. Doc. 32.
[18] *See id.* at pp. 16–17.
[19] R. Doc. 33 at ¶¶ 42–48.
[20] *Id.* at ¶¶ 49–50.
[21] *Id.* at ¶¶ 7–10.

attorney's fees and costs, as well as injunctive relief requiring the Defendants to destroy their fingerprints and prohibiting the Defendants from continuing to store and collect their fingerprints.[22]

In the instant Motion to Dismiss, the Defendants argue that each of Plaintiffs' claims against the Defendants should be dismissed because Plaintiffs fail to sufficiently allege that the Defendants violated the constitutional rights, whether federal or state, of the Plaintiffs.[23]  The Defendants contend that the fingerprinting of the Plaintiffs does not constitute a "search" within the meaning of the Fourth Amendment and that, even if it were a Fourth Amendment search, fingerprinting under these circumstances would not be "unreasonable."[24]   According to the Defendants, because the fingerprinting was done for non-law enforcement purposes, namely timekeeping, the "special needs" exception to the warrant requirement applies and the search is therefore reasonable.  Accordingly, the Defendants move the Court to dismiss Plaintiffs' claims because Plaintiffs cannot establish a violation of their Fourth Amendment rights.

The Plaintiffs filed a response in opposition to the Motion.[25]  They argue that the "[f]orced collection and storage of fingerprints constitutes a search and seizure under the Fourth Amendment" and that the Defendants have failed to demonstrate either reasonable suspicion sufficient to justify such search or that the search was

---

[22] *Id.* at ¶¶ 48, 50.
[23] *See* R. Doc. 36-1.
[24] *Id.* at pp. 6–8.
[25] *See* R. Doc. 39.

reasonable under the "special needs" doctrine.[26]  Plaintiffs allege that they have a reasonable expectation of privacy in their fingerprints and that the Defendants cannot require them to provide their fingerprints, even for alleged timekeeping purposes, without some showing of reasonable suspicion of criminal activity or a valid search warrant.  The Plaintiffs ask the Court to deny the Defendants' Motion.

The Defendants filed a brief Reply in support of their Motion, again arguing that the Plaintiffs fail to establish that the taking of fingerprints in the employment context constitutes a Fourth Amendment search, let alone an "unreasonable" one.[27] The Defendants further contend that the government's undisputed interest here in timekeeping and management of the public employees' workplace outweighs any privacy concerns, rendering any potential search reasonable.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[28]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[26] *Id.* at pp. 14–15.
[27] R. Doc. 42.
[28] Fed. R. Civ. P. 12(b)(6).
[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

liable for the misconduct alleged."[30]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[31]

In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[32]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[33]  "Dismissal is appropriate when the complaint on its face shows a bar to relief."[34]  Although a § 1983 plaintiff asserting a *Monell* claim "is not required to single out the specific policymaker in his complaint," the plaintiff must "plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker."[35]

In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[36]

---

[30] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).

[31] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[32] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[33] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[34] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[35] *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016); *accord McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023).

[36] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).

### III.   ANALYSIS

In addressing this Motion, the Court limits its consideration to the Second Amended Complaint and the applicable law.  The Fourth Amendment guarantees, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[37]  As the Supreme Court has recognized, the purpose of the Fourth Amendment is to protect individual privacy against arbitrary invasions by the government.[38]  Although this is a civil case not involving any alleged criminal conduct, "[i]t is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations."[39] To satisfy their burden in sufficiently stating a Fourth Amendment claim, Plaintiffs must plead facts establishing (1) that a search or seizure within the meaning of the Fourth Amendment occurred and (2) that such search or seizure was unreasonable.  Further, to establish *Monell* liability under Section 1983, Plaintiffs must prove three elements: "a policymaker; an official policy; and a violation of Constitutional rights whose 'moving force' is the policy or custom."[40]

Here, Plaintiffs claim that the Defendants' issuance of an order requiring that Plaintiff firefighters provide their fingerprints for timekeeping purposes invaded their privacy in violation of their Fourth Amendment right to be free from unreasonable searches and seizures.  Plaintiffs seek to impose *Monell* liability on the

---

[37] U.S. Const. amend. IV.
[38] *Carpenter v. United States*, 585 U.S. 296, 303 (2018).
[39] *Ontario v. Quon*, 560 U.S. 746, 755 (2010).
[40] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

Defendants based on that alleged violation of their Fourth Amendment rights. However, even assuming such mandatory fingerprint collection qualifies as a Fourth Amendment search, Plaintiffs fail to show that the search was unreasonable. Without an underlying constitutional violation, Plaintiffs' Section 1983 *Monell* claim necessarily fails. Accordingly, the Court grants the Defendants' Motion to Dismiss.

**A.      Whether fingerprinting likely constitutes a search under the Fourth Amendment.**

To assert a claim for violation of their Fourth Amendment rights, Plaintiffs must first demonstrate that they were searched within the meaning of the Fourth Amendment. Caselaw addressing whether fingerprinting is a search is limited and yields no definitive answer. As one prominent commentator on Fourth Amendment law has noted, "it is to be doubted that the question of whether fingerprinting is a search can be taken as settled."[41] Indeed, a decade ago Justice Scalia remarked that "our [U.S. Supreme Court] cases provide no ready answer" to whether fingerprinting constitutes a search.[42] Since then, neither the Supreme Court nor the Fifth Circuit have squarely answered that question. Nevertheless, the Court addresses relevant Supreme Court and lower court decisions below.

The Supreme Court has recognized two different tests for determining whether a Fourth Amendment search has occurred. In *Katz v. United States*[43], the Supreme

---

[41] 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 2.2(d) (6th ed. 2024) ("[I]t might be contended that the act of taking fingerprints is no search because, '[e]xcept for the rare recluse who chooses to live his life in complete solitude,' we constantly leave our fingerprints in public places." (quoting *United States v. Doe (Schwartz)*, 457 F.2d 895 (2d Cir. 1972))).

[42] *Maryland v. King*, 569 U.S. 435, 477 (2013) (Scalia, J., dissenting).

[43] 389 U.S. 347 (1967).

Court held that "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."[44]  This "reasonable expectation of privacy" test has a "two fold requirement"; there must be (1) an "actual (subjective) expectation of privacy" that (2) "society is prepared to recognize as 'reasonable.'"[45] Put differently, "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action."[46]  In *Katz,* the Supreme Court explained that "[w]hat a person knowingly exposes to the public even in his own home or office, is not a subject of Fourth Amendment protection.  But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."[47]  Later decisions, as detailed below, have relied upon this language from *Katz* to explain why fingerprinting may not violate the Fourth Amendment's strictures.

Second is the more recent *Jones* "common-law trespassory" test.  In *United States v. Jones*[48], the Supreme Court "revived" a property approach to the question of whether a search has occurred.[49]  Under the *Jones* test, a search occurs where there

---

[44] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citing *Illinois v. Andreas*, 103 S. Ct. 3319, 3323 (1983); *United States v. Knotts*, 103 S. Ct. 1081, 1085 (1983); *Smith v. Maryland*, 442 U.S. 735, 739–41 (1979); *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).

[45] *Katz*, 389 U.S. at 361 (Harlan. J., concurring).  Justice Harlan's concurring opinion in *Katz* ultimately came to be accepted by the Supreme Court as the *Katz* test.  *See, e.g.*, *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (explaining *Katz*'s "two-part inquiry").

[46] *Smith*, 442 U.S. at 740 (citations omitted).

[47] *Katz*, 389 U.S. at 351.

[48] 565 U.S. 400 (2012).

[49] *See United States v. Richmond*, 915 F.3d 352, 356 (5th Cir. 2019).

is (1) a trespass[50] or physical intrusion[51] "conjoined" with (2) "an attempt to find something or obtain information."[52]  Both elements must be met to constitute a Fourth Amendment search as "[a] trespass on 'houses' or 'effects,' or a *Katz* invasion of privacy, is not alone a search unless it is done to obtain information; and the obtaining of information is not alone a search unless it is achieved by such a trespass or invasion of privacy."[53]

Importantly, the *Jones* test coexists with and does not supplant the *Katz* test. As then-Judge Gorsuch explained, "government conduct can constitute a Fourth Amendment search either when it infringes on a reasonable expectation of privacy or when it involves a physical intrusion (a trespass) on a constitutionally protected space or thing ('persons, houses, papers, and effects') for the purpose of obtaining information."[54]  The Court thus appropriately looks to both *Katz* and *Jones* in considering whether fingerprinting constitutes a Fourth Amendment search.

*Davis v. Mississippi* is the first relevant case decided by the U.S. Supreme Court in the post-*Katz* era to address the relationship between fingerprinting and the

---

[50] As the majority opinion in *Jones* makes clear, "[t]he Fourth Amendment protects against trespassory searches only with regard to those items ('persons, houses, papers, and effects') that it enumerates," not to any technical trespass. 565 U.S. at 411 n.8.

[51] Although *Jones* speaks of trespasses, in later cases applying *Jones*, the Supreme Court has used the term "physical intrusion."  *See Florida v. Jardines*, 569 U.S. 1, 11 (2013) (a search occurs "when the government gains evidence by physically intruding on constitutionally protected areas"); *Grady v. North Carolina*, 575 U.S. 306, 310 (2015) ("The State's program is plainly designed to obtain information. And since it does so by physically intruding on a subject's body, it effects a Fourth Amendment search.").  As one leading scholar has explained, "perhaps the *Jones* test is not about the technicalities of trespass doctrine but rather about physical intrusion into property." Orin Kerr, *What is the State of the Jones Trespass Test After Florida v. Jardines?*, Volokh Conspiracy (Mar. 27, 2013), https://volokh.com/2013/03/27/what-is-the-state-of-the-jones-trespass-test-after-florida-v-jardines/.

[52] *Jones*, 565 U.S. at 408 n.5.

[53] *Id.*

[54] *United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016) (Gorsuch, J.).

Fourth Amendment.[55]  While *Davis* involved a criminal matter, the Supreme Court considered the constitutionality of "[d]etentions for the sole purpose of obtaining fingerprints," holding that while such detentions "are . . . subject to the constraints of the Fourth Amendment," they "might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense."[56]  Notedly, the Court explained that "[d]etention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions" because "[f]ingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search."[57]  This last line contrasting fingerprinting with searches, albeit dicta, suggests that the Court did not view fingerprinting as a search.  At bottom, however, *Davis* concerns seizures in the criminal realm for the purposes of taking fingerprints and does not directly answer whether fingerprinting constitutes a search.  As the Supreme Court in *United States v. Dionisio* made clear, "in *Davis* it was the initial seizure—the lawless dragnet detention—that violated the Fourth and Fouteenth [sic] Amendments, not the taking of the fingerprints."[58]

*Dionisio* itself is instructive.  In that case, the Court considered the lawfulness of a grand jury's directive to an individual to provide a voice recording.[59]  The Court,

---

[55] 394 U.S. 721 (1969).
[56] *Id.* at 727.
[57] *Id.*
[58] 410 U.S. 1, 11 (1973).
[59] *Id.*

relying upon language from *Katz*, found that the compelled voice exemplar posed no Fourth Amendment concerns, explaining:

> The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversations, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to head. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world.[60]

The Court then described the voice exemplars as "like the fingerprinting in *Davis* where, though the initial dragnet detentions were constitutionally impermissible, we noted that the fingerprinting itself 'involves none of the probing into an individual's private life and thoughts that marks an interrogation or search.'"[61] Like *Davis*, *Dionisio* suggests that fingerprinting does not implicate an individual's reasonable expectation of privacy and therefore is not a search.

Next, in *Cupp v. Murphy*, another criminal matter, the Supreme Court considered whether fingernail scrapings taken from a defendant in custody constituted a search.[62] In answering that question in the affirmative, the Court distinguished the facts of the case from those of *Davis* and explained that the *Cupp* defendant "was subjected to a search as well as a seizure of his person," underscoring that *Davis* is principally a *seizure* case.[63] Further, the Court downplayed the privacy interests implicated in fingerprinting. "Unlike the fingerprinting in *Davis* [or] the

---

[60] *Id.* at 14.
[61] *Id.* at 15 (citing *Davis*, 394 U.S. at 727).
[62] 412 U.S. 291 (1973).
[63] *Id.* at 295.

voice exemplar obtained in *United States v. Dionisio*," the *Cupp* Court explained, "the search of the respondent's fingernails went beyond mere 'physical characteristics . . . constantly exposed to the public,' and constituted the type of 'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny."[64]  The clear import of the Court's language is that fingerprinting does not involve an invasion of one's reasonable expectation of privacy.

A decade later, the Supreme Court in *Hayes v. Florida* considered the constitutionality of detaining a suspect without probable cause or judicial authorization and transporting them to a station house for fingerprinting.[65]  Relying upon *Davis*, the Supreme Court held that such detention for fingerprinting purposes violates the Fourth Amendment's proscription of unreasonable seizures.[66]  "[O]ur view," the Court explained, "continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes."[67]

As *Hayes* is primarily based on the unreasonable detention and seizure, the Court did not directly answer whether fingerprinting amounts to a search.  Indeed, "*Hayes*," as one judge has put it, "is about a seizure, not a search."[68]  This Court concurs with that assessment; insofar as *Hayes* is little more than a direct application

---

[64] *Id.* (quoting *Dionisio*, 410 U.S. at 14).
[65] 470 U.S. 811 (1985).
[66] *See id.* at 817–18.
[67] *Id.* at 816.
[68] *United States v. Askew*, 529 F.3d 1119, 1147 (D.C. Cir. 2008) (Griffith, J., concurring).

of *Davis*—itself a seizure case as the Supreme Court has made clear[69]—it follows that *Hayes* too concerns unreasonable seizures, not searches.  However, in dicta, the Court remarked that "fingerprinting . . . represents a much less serious intrusion upon personal security than *other types of searches* and detentions," suggesting that fingerprinting may be a type of search, albeit one with diminished privacy concerns.[70] The Court recognizes that then-Judge Kavanaugh, in a dissenting opinion on the D.C. Circuit, focused on this exact language from *Hayes* ("other types of searches") to argue that the "[Supreme] Court's decision in *Hayes* plainly considered fingerprinting a search" and that a "person has a protected interest, albeit a diminished one, in the taking of his or her fingerprints."[71]  Notably, Judge Kavanaugh's arguments predate Justice Scalia's later claim that Supreme Court caselaw provides "no ready answer" to whether fingerprinting amounts to a search.[72]

More recently, in *Maryland v. King*, the Supreme Court upheld the mandatory DNA collection of persons arrested for a felony.[73]  In finding that such collection does not violate the Fourth Amendment, the Court analogized the taking of DNA samples to the taking of a suspect's fingerprints.[74]  Although the Court never specified whether fingerprinting amounts to a Fourth Amendment search,[75] the Court nevertheless emphasized the minimal privacy concerns involved with fingerprinting

---

[69] *See Dionisio*, 410 U.S. at 11 ("[I]n *Davis* it was the initial seizure—the lawless dragnet detention— that violated the Fourth and Fouteenth [sic] Amendments, not the taking of the fingerprints.").

[70] *Hayes*, 470 U.S. at 814 (citing *Davis v. Mississippi*, 394 U.S. 721, 727 (1969)).

[71] *Askew*, 529 F.3d at 1158 n.6 (Kavanaugh, J., dissenting).

[72] *Maryland v. King*, 569 U.S. 435, 477 (2013) (Scalia, J., dissenting).

[73] *See id.* at 465–66 (majority opinion).

[74] *See id.* at 458–61.

[75] In dissent, Justice Scalia criticized the Court for "not actually say[ing] whether it believes that taking a person's fingerprint is a Fourth Amendment search." *Id.* at 477 (Scalia, J., dissenting).

and noted that fingerprinting has long been found to be a "legitimate police booking procedure that is reasonable under the Fourth Amendment."[76]

In sum, the Supreme Court's pronouncements on the subject of fingerprinting provide several guideposts relevant to this Court's determination.  First, law enforcement may not seize and detain individuals for the purpose of fingerprinting without probable cause or at least reasonable suspicion.  Such circumstances are not implicated in this case, however; Plaintiffs make no allegations that they, as public employees, were seized by their state employer within the meaning of the Fourth Amendment.  After all, "not every governmental interference with an individual's freedom of movement raises such constitutional concerns that there is a seizure of the person."[77]  The sort of "dragnet" sweeps involved in *Davis* and *Hayes* bear little relation to a policy of fingerprinting for timekeeping purposes in the workplace.[78] Second, because a person's fingerprints are "constantly exposed to the public," fingerprinting presents diminished privacy concerns.[79]  Third, absent an unreasonable initial seizure, fingerprinting itself has long been held to not present Fourth Amendment concerns.[80]

---

[76] *Id.* at 466 (majority opinion).

[77] *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 618 (1989) (citations omitted).

[78] This is not to say that the Defendants' reasons for fingerprinting the Plaintiffs control whether or not a search occurred. *See Grady v. North Carolina*, 575 U.S. 306, 309 (2015) (explaining that the government's purpose in collecting information does control whether the collection amounts to a search).  But the context of the mandatory fingerprinting does implicate whether the Plaintiffs were seized.

[79] *Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (quoting *United States v. Dionisio*, 410 U.S. 1, 14 (1973)).

[80] *See, e.g.*, *King*, 569 U.S. at 466 ("[T]aking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.").

The lower courts that have considered whether fingerprinting is a Fourth Amendment search under Supreme Court precedent have reached differing conclusions. Within the Fifth Circuit, the Court has located one district court opinion to address the matter. In *Williams v. Berry*, the most closely analogous case to the instant matter the Court has found, the plaintiffs filed a § 1983 claim challenging the constitutionality under the Fourth Amendment of Mississippi's eChildcare program wherein participating parents were fingerprinted each time they either dropped off or picked up their child from a day care provider.[81] In rejecting the plaintiffs' Fourth Amendment challenge, the court relied upon the Supreme Court caselaw detailed above and held that the mandatory fingerprinting as required by the childcare program did not amount to a Fourth Amendment search.[82] The *Williams* court also reviewed and relied on several other lower court decisions in reaching its conclusion, each case finding that fingerprinting is not a search under the Fourth Amendment.[83] Those cases are instructive.[84] Among these referenced cases is *U.S. v. Faira-Gonzalez*, an Eleventh Circuit case which stated that "[t]he police can obtain both photographs and fingerprints without conducting a search under the Fourth Amendment."[85] In that case, the Eleventh Circuit based its conclusion on *Dionisio*, which it characterized as holding that "fingerprinting . . . does not constitute a search."[86] *Williams* also cited several district courts which have concluded

---

[81] 977 F. Supp. 2d 621, 632 (2013).

[82] *See id.* at 631–32.

[83] *See id.* at 632.

[84] *Id.*

[85] *Id.* (citing *U.S. v. Farias-Gonzalez*, 556 F.3d 1181, 1188 (11th Cir. 2009)).

[86] *Farias-Gonzalez*, 556 F.3d at 1188 (citing *United States v. Dionisio*, 410 U.S. 1, 14–15 (1973)).

similarly.[87]  Notably, *Williams* did not consider whether fingerprinting amounts to a search under *Jones*'s trespassory test.

The D.C. Circuit has also addressed the Fourth Amendment implications of fingerprinting.   In *United States v. Askew*, which predates the Supreme Court's decision in *Jones*, the *en banc* court characterized the Supreme Court's decision in *Cupp v. Murphy* as indicating that "fingerprinting is another investigative measure that, like a dog sniff, is not a search requiring probable cause."[88]  *Askew* further explained that "*Cupp* thus relied on the Court's suggestion in *Davis v. Mississippi* that fingerprinting is not a search, because it 'involves none of the probing into an individual's private life and thoughts that marks an interrogation or search.'"[89]  In a concurring opinion, Judge Griffith noted that the "Supreme Court has never held that fingerprinting is a search" and that the "Supreme Court offered conflicting views of the issue within *Hayes* itself."[90]  As discussed earlier, then-Judge Kavanaugh filed a

---

[87] *See Williams*, 977 F. Supp. 2d at 632 (citing *U.S. v. Teter*, NO. 06-4050-01-CR-C-SOW, 2008 WL 141671, at *6 (W.D. Mo. Jan. 11, 2008) ("[P]ursuant to *Dionisio*, because Teter regularly exposes to the public his face, as well as finger and palm prints and handwritings, these are not protected by the Fourth Amendment."); *Stehney v. Perry*, 907 F. Supp. 806, 823 (D.N.J. 1995) ("[T]he taking of a fingerprint is not a search even though it involves touch and pressing, and reveals physiological traits too minute to be considered exposed to public view in any meaningful sense."); *Rowe v. Burton*, 884 F. Supp. 1372, 1384 (D. Alaska 1994) ("[T]he Supreme Court has recognized that one does not have an objectively reasonable expectation of privacy in one's likeness or fingerprints under the Fourth Amendment."); *Johnson v. Masssey*, No. 3:92 CV 178, 1993 WL 372263, at *5 (D. Conn. Sept. 17, 1993) ("[I]nasmuch as the plaintiffs' fingerprints were 'mere physical characteristics' that were 'constantly exposed to the public, they were not subject to the protections of the Fourth Amendment."); *State v. Chesney*, 353 A.2d 783, 788 (1974) ("[A]pplying paraffin casts to the accused's hands [to test for gunpowder residue] did not violate the fourth . . . amendment[] any more than fingerprinting.")).
[88] 529 F.3d 1119, 1140 (D.C. Cir. 2008) (en banc) (citing *Cupp v. Murphy*, 412 U.S. 291 (1973)).
[89] *Id.* (quoting *Davis v. Mississippi*, 394 U.S. 721, 727 (1969)).
[90] *Id.* at 1147 (Griffith, J., concurring) (citations omitted).

dissenting opinion in which he argued that *Hayes* clarified prior caselaw on the matter and "plainly considered fingerprinting a search."[91]

While the courts in *Williams* and *Askew*, and the cases referenced therein, agreed that fingerprinting does not involve an intrusion on an individual's reasonable expectation of privacy, Plaintiffs cite several district court opinions which have held otherwise. In *In re Search Warrant No. 5165*, a federal magistrate judge, citing *Hayes*, stated that "[t]he Supreme Court has unquestionably held that the taking of a fingerprint is a search."[92] Likewise, in *Matter of Search of [Redacted] Washington, D.C.*, the court, again citing *Hayes*, explained that "the taking of a fingerprint is undeniably a search."[93] This Court respectfully disagrees with such a definitive pronouncement. *Hayes* is at heart a seizure case and provides no clear guidance as to whether fingerprinting amounts to a search. That members of the Supreme Court[94], in addition to numerous federal district and appellate courts, appear to disagree over whether *Hayes* should be read as Plaintiffs argue makes clear that *Hayes* did not "undeniably" and "unquestionably" hold that fingerprinting is a Fourth Amendment search.

---

[91] *Id.* at 1158 n.6 (Kavanaugh, J., dissenting).

[92] 470 F. Supp. 3d 715, 721 (E.D. Ky. 2020) (citing *Hayes v. Florida*, 470 U.S. 811, 816–17 (1985); *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d 523, 531 (D.D.C. 2018); *Askew*, 529 F.3d at 1158 (Kavanaugh, J., dissenting)).

[93] 317 F. Supp. 3d 523, 531 (D.D.C. 2018) (citing *Hayes*, 470 U.S. at 816–17; *Askew*, 529 F.3d at 1158 (Kavanaugh, J., dissenting)).

[94] *Compare Askew*, 529 F.3d at 1158 n.6 (Kavanaugh, J., dissenting) ("The Court's later decision in *Hayes* plainly considered fingerprinting a search."), *with Maryland v. King*, 569 U.S. 435, 477 (2013) (Scalia, J., dissenting) ("The Court does not actually say whether it believes that taking a person's fingerprints is a Fourth Amendment search, and our cases provide no ready answer to that question.").

In sum, while the Supreme Court's decisions in this area are less than clear, most lower courts to have considered whether fingerprinting constitutes a search have answered in the negative. Applying the *Katz* test, those courts have held that a person lacks an objectively reasonable expectation of privacy in their own fingerprints regardless of whether they might have had a subjective expectation of privacy because they knowingly expose their fingerprints to the public. Several courts have also noted the minimally intrusive nature of fingerprinting as compared with the taking of blood and urine.

The Plaintiffs here attempt to distinguish this prior caselaw on the grounds that modern advanced technology has altered the privacy implications of fingerprinting in such a way that the assumptions previously relied upon no longer hold water.[95] Plaintiffs argue that biometric data such as fingerprints play an enhanced role in modern society such as, for example, in unlocking electronic devices, and that fingerprint information can increasingly be used by third parties for illicit purposes.[96] These considerations, while not insubstantial, do not negate the general conclusion of most courts on the issue. Contrary to Plaintiffs' argument, the increased prevalence of fingerprinting if anything cuts against finding a reasonable expectation of privacy in one's fingerprints. Remarking upon the modern ubiquity of fingerprinting, Justice Scalia described that "[a]s fingerprint databases expanded from convicted criminals, to arrestees, to civil servants, to immigrants, to everyone with a driver's license, Americans simply 'became accustomed to having our

---

[95] *See* R. Doc. 39 at pp. 8–10.

[96] *See id.*

fingerprints on file in some government database.'"[97]  Given the widespread adoption of fingerprinting in modern society[98], Plaintiffs have not sufficiently alleged that they have a privacy interest in their fingerprints that "society is prepared to recognize as 'reasonable.'"[99]  The Court, relying upon guidance from the Supreme Court, thus finds that Plaintiffs have not established that fingerprinting constitutes a search under the *Katz* "reasonable expectation of privacy" test.

That does not end the inquiry, however.  While fingerprinting may not involve an invasion of an individual's reasonable expectation of privacy sufficient to satisfy *Katz*, the Court next addresses whether fingerprinting may constitute a search under the *Jones* trespassory test.  The parties have dedicated few words to *Jones*; Plaintiffs have done so only briefly, and the Defendants have made no mention of the case.  As discussed earlier, a search occurs under *Jones* where there is (1) a trespass or physical intrusion "conjoined" with (2) "an attempt to find something or obtain information."[100]

Although caselaw addressing whether fingerprinting constitutes a search under *Jones* is sparse, the Court finds that fingerprinting, insofar as it involves a physical trespass or intrusion for the purpose of obtaining information, likely does amount to a Fourth Amendment search.  Fingerprinting, as Plaintiffs allege, requires the party obtaining the fingerprints to come into physical contact with the person being fingerprinted.  The Defendants here made contact with the Plaintiffs via a

---

[97] *Maryland v. King*, 569 U.S. 435, 479 (2013) (Scalia, J., dissenting) (quoting *United States v. Kincade*, 379 F.3d 813, 874 (9th Cir. 2004) (Kozinski, J., dissenting)).

[98] By way of example, the undersigned and her law clerks and staff all had to undergo fingerprinting as a prerequisite for their current jobs.

[99] *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan. J., concurring).

[100] *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012); *see also supra* nn.50–51.

fingerprint reader in order to obtain the Plaintiffs' fingerprints. Such physical contact, albeit slight, constitutes a trespass or physical intrusion. For example, in *Grady v. North Carolina*, the Supreme Court held that the forced wearing of an external satellite tracking device amounts to a search under *Jones*, confirming that *Jones* applies to physical intrusions on an individual's body.[101] Notedly, the Court found that a physical trespass may occur even where there is only external contact with an individual.[102]

While recognizing the paucity of precedent, this Court cannot find a principled basis for differentiating *Grady* from the instant case.[103] Fingerprinting requires (1) a physical trespass on the digits of an individual (2) for the purpose of collecting information, namely that individual's fingerprints. Even though fingerprinting may not amount to a search under *Katz*, the Supreme Court's decision in *Jones* directs that the Court classify the fingerprinting at issue as a Fourth Amendment search.

## B. Whether the fingerprinting was reasonable.

Even if Plaintiffs have established that mandatory fingerprinting amounts to a search, Plaintiffs have only cleared the first hurdle in establishing a violation of

---

[101] 575 U.S. 306, 310 (2015) ("And since it does so by physically intruding on a subject's body, it effects a Fourth Amendment search."); *see also id.* ("In *United States v. Jones,* we held that 'the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" We stressed the importance of the fact that the Government had 'physically occupied private property for the purpose of obtaining information.'") (citations omitted).

[102] *Id.* at 309 ("[I]t follows that a State also conducts a search when it *attaches a device to a person's body*, without consent, for the purpose of tracking that individual's movements." (emphasis added)).

[103] At least one court has found that the reasoning of *Grady* compels that fingerprinting is a search under *Jones*. In *Johnson v. VanderKooi*, the Supreme Court of Michigan "appl[ied] *Grady* in holding that a physical intrusion on a person's body [fingerprinting] constitutes a trespass under the Fourth Amendment." 509 Mich. 524, 537–38 (2022). And because, as the court explained, fingerprinting was done for the purpose of obtaining information, it constituted a search under the Fourth Amendment. *Id.*

their Fourth Amendment right against unreasonable searches and seizures.  After all, "[t]he Fourth Amendment does not proscribe all search and seizures, but only those that are unreasonable."[104]   Therefore, "the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"[105]  This touchstone of reasonableness is especially important in cases, such as this one, where the search or seizure was neither approved nor disapproved of at the time the Fourth Amendment was enacted.[106]  For the reasons set forth below, Plaintiffs have failed to sufficiently allege that the fingerprinting in this case is unreasonable.

A determination of what is reasonable "depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."[107] "Thus, the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'"[108]   As a general rule, however, warrantless searches "undertaken by law enforcement officials to discover evidence of criminal wrongdoing"[109] are presumptively unreasonable.  "Except in certain well-defined

---

[104] *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 619 (1989) (citing *O'Connor v. Ortega*, 480 U.S. 709, 719 (1987) (plurality opinion); *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985)); *accord Maryland v. King*, 569 U.S. 435, 477 (2013) ("To say that the Fourth Amendment applies here is the beginning point, not the end of the analysis, as the Fourth Amendment constrains, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.").

[105] *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).

[106] *Id.*

[107] *U.S. v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 337–42 (1985)).

[108] *Skinner*, 489 U.S. at 619 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)).

[109] *Vernonia Sch. Dist. 47J*, 515 U.S. at 653.

circumstances, a search or seizure . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."[110]

The warrant requirement is not absolute, however.[111] "Neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance."[112] Recognizing that reasonableness, not wooden adherence to any particular formality, is the ultimate consideration in the Fourth Amendment context, the Supreme Court has upheld several different exceptions to the warrant requirement. As the Supreme Court has explained, one such exception exists where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."[113] This so-called "special needs" exception applies to searches and seizures not conducted "to serve the ordinary needs of law enforcement" and where it is "impractical to require a warrant or some level of individualized suspicion in the particular context."[114]

The Supreme Court has applied the "special needs" exception to uphold, *inter alia*, the suspicionless drug testing of railroad employees[115], public school student-athletes[116], and federal customs officers who carry arms or are involved in drug

---

[110] *Skinner*, 489 U.S. at 619 (citing *United States v. Place*, 462 U.S. 696, 701, n. 2 (1983); *United States v. U.S. Dist. Ct. for E. Dist. Of Mich., S. Div.*, 407 U.S. 297, 313 (1972)).

[111] *See Vernonia Sch. Dist. 47J*, 515 U.S. at 653 ("But a warrant is not required to establish the reasonableness of all government searches; and when a warrant is not required (and the Warrant Clause therefore not applicable), probable cause is not invariably required either.").

[112] *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989) (citations omitted).

[113] *Skinner*, 489 U.S. at 619 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).

[114] *Von Raab*, 489 U.S. at 666.

[115] *Skinner*, 489 U.S. at 633.

[116] *Vernonia Sch. Dist. 47J*, 515 U.S. at 664–65.

interdiction[117], cavity searches of prison inmates[118], searches of probationer's homes[119], and the "legitimate work-related, noninvestigatory intrusions" into a public employee's office.[120]  The Court finds the latter case in the government-as-employer context particularly instructive.  In *O'Connor v. Ortega*, the respondent was a psychiatrist and employee of a state hospital whose office was searched and whose personal items were seized from his desk by hospital personnel.[121]  The seized items were later used in administrative proceedings which resulted in his discharge.[122]  The physician alleged that the search of his office violated the Fourth Amendment.  Upon review by the Supreme Court, the Court explained:

> In our view, requiring an employer to obtain a warrant whenever the employer wished to enter an employee's office, desk, or file cabinets for a work-related purpose would seriously disrupt the routine conduct of business and would be unduly burdensome.  Imposing unwieldy warrant procedures in such cases upon supervisors, who would otherwise have no reason to be familiar with such procedures, is simply unreasonable. In contrast to other circumstances in which we have required warrants, supervisors in offices such as at the Hospital are hardly in the business of investigating the violation of criminal laws. Rather, work-related searches are merely incident to the primary business of the agency. Under these circumstances, the imposition of a warrant requirement would conflict with "the common-sense realization that government offices could not function if every employment decision became a constitutional matter."[123]

---

[117] *Von Raab*, 489 U.S. at 679.
[118] *Bell v. Wolfish*, 441 U.S. 520, 558–560 (1979).
[119] *Griffin v. Wisconsin*, 483 U.S. 868, 879–80 (1987).
[120] *O'Connor v. Ortega*, 480 U.S. 709, 725 (1987).
[121] *Id*. at 712–13.
[122] *Id*. at 713.
[123] *Id*. at 722 (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)).

The Court further "conclude[d] that the 'special needs, beyond the normal need for law enforcement make the . . . probable-cause requirement impracticable' for legitimate work-related, noninvestigatory intrusions."[124]  The Court found that these "work-related, noninvestigatory intrusions" should instead be governed by a standard of reasonableness under which "both the inception and the scope of the intrusion must be reasonable."[125]

This case, too, concerns a work-related, noninvestigatory intrusion.  Accepting as true Plaintiffs' allegations, the fingerprinting took place as part of a newly implemented time management system approved by the Jefferson Parish Council in order to accurately assess when civil service Fire Department employees have clocked in and out for their work period, not for any law enforcement reason.  As such, the fingerprinting at issue here is subject to the same standard of reasonableness as in *O'Connor*.  In determining reasonableness and whether the "special needs" exception applies, the Court considers several factors including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted."[126]  Put differently, a search must be justified both at its inception (the "why") and in its scope (the "how").  While no factor is wholly dispositive, "[t]he fact that an intrusion is negligible is of central relevance to determining reasonableness."[127]  In the employment context, "when the government

---

[124] *Id.* at 725 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgment)).

[125] *Id.* at 725–726 (citations omitted).

[126] *Wanger v. Bonner*, 621 F.2d 675, 681 (5th Cir. 1980) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)); *accord Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 664–65 (1995) (considering the privacy expectations, the obtrusiveness of the search, and the strength of the rationale for the search).

[127] *Maryland v. King*, 569 U.S. 435, 446 (2013).

conducts a search in its capacity as employer . . . the relevant question is whether that intrusion upon privacy is one that a reasonable employer might engage in."[128] Ultimately, the Court must weigh the intrusiveness of fingerprinting on the Plaintiffs' privacy interests against the Defendants' legitimate workplace interests.

Again, accepting the Plaintiffs' factual allegations, the Court determines that the legal factors weigh in favor of finding Defendants' fingerprinting policy to be reasonable under the circumstances. Of "central relevance" to this conclusion is the minimal scope of the particular intrusion. As this Court explained in greater detail above when addressing whether fingerprinting involves an invasion of one's reasonable expectation of privacy, numerous courts, including the Supreme Court, have repeatedly recognized that fingerprinting entails a negligible intrusion on an individual's privacy interest.[129] The Court will not belabor the point by rehashing all of the relevant caselaw again, but suffice it to say, most if not all courts have endorsed *Davis*'s characterization of fingerprinting as "involv[ing] none of the probing into an individual's private life and thoughts that marks an interrogation or search."[130] Indeed, even those courts which have deemed fingerprinting to be a search have emphasized the "diminished" privacy interests involved in "purely external searches such as fingerprinting" due to their "less intrusive nature."[131] Moreover, the Court is

---

[128] *Vernonia Sch. Dist. 47J*, 515 U.S. at 665 (citing *O'Connor*, 480 U.S. 709).

[129] *See supra* Part III.A; *Williams v. Berry*, 977 F. Supp. 2d 621, 635 (S.D. Miss. 2013) (noting the "minimal intrusion associated with fingerprinting and fingerscanning."). *Cf. Aubrey v. Sch. Bd. of Lafayette Par.*, 148 F.3d 559, 564 (5th Cir. 1998) (concluding that the intrusiveness of a urine test is "minimal").

[130] *Davis v. Mississippi*, 394 U.S. 721, 727 (1969).

[131] *See In re Search Warrant No. 5165*, 470 F. Supp. 3d 715, 722 (E.D. Ky. 2020) (quoting *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d 523, 531 (D.D.C. 2018)).

mindful of Justice Scalia's observation regarding the ubiquity of fingerprinting in the modern age.[132]   The Court is hard-pressed to deem something as routine and commonplace as fingerprinting as anything more than a minor intrusion.

In their Opposition, Plaintiffs argue that "[c]apturing biometric data is not as simple as taking a picture of a fingerprint" and that "[it] is a much more invasive procedure of capturing an individual identity marker."[133]   However, beyond merely stating what the "main modules of a fingerprint verification system" are, Plaintiffs go no further in alleging how the overall process is unduly invasive or intrusive.[134] There is no allegation or evidence, for example, that fingerprinting requires any physical intrusion into or under the skin of a person's body;  fingerprinting, unlike a blood draw, DNA swab, or urine sample, only intrudes upon the exterior of a person's body and courts have routinely distinguished "purely external" searches from those involving intrusion into the body.[135]   Rather, Plaintiffs assert that if one's fingerprints are "stolen, placed in the public domain, or misused through the advancement of technology, a person could never be made whole."[136]   None of these concerns, valid as they may be, has any bearing on the physical intrusiveness of fingerprinting.[137]   The

---

[132] *See Maryland v. King*, 569 U.S. 435, 479 (2013) (Scalia, J., dissenting).

[133] R. Doc. 39 at p. 3.

[134] *Id.* at pp. 3–4.

[135] *See Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d 523, 531 (D.D.C. 2018) ("[C]ases have recognized a diminished interest in 'purely external searches such as fingerprinting,' based on their less intrusive nature." (quoting *United States v. Kriesel*, 508 F.3d 941, 948 (9th Cir. 2007))); *United States v. Dionisio*, 410 U.S. 1, 14 (1973)) ("The required disclosure of a person's voice is thus immeasurably further removed from the Fourth Amendment protection than was the intrusion into the body effected by the blood extraction in [*Schmerber v. Claifornia*, 384 U.S. 757 (1966)]."); *Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir. 2005) ("[T]he [Supreme] Court has also recognized a distinction between non-intrusive means of obtaining physical evidence (such as fingerprinting) and more invasive measures (such as drawing blood).").

[136] R. Doc. 39 at p. 4.

[137] Further, such allegations, without more, fail to rise above mere speculation.

reasonableness of a search does not rise and fall with speculative concerns about potential misuse by hypothetical malefactors. Given that Plaintiffs do not speak to the currently alleged intrusion but instead to a hypothetically worse future invasion of their privacy, the Court does not find this argument compelling or relevant. The Court agrees with the Defendants that the intrusiveness of fingerprinting is minimal. Accordingly, the scope and manner of fingerprinting weigh in favor of the reasonableness of the search.

Second, the Defendants' reasons for initiating this intrusion are legitimate. As alleged in Plaintiffs' Second Amended Complaint, the Defendants' justification for the fingerprinting is for timekeeping purposes for public servants.[138] That is, the Defendants have allegedly undertaken this fingerprinting process in order to accurately assess when the civil servant firefighters clock in and out of work.[139] As the Supreme Court recognized in *Wyman v. James*, "the government has a legitimate interest in ensuring that public funds are used for their intended purpose."[140] In this case, the Court agrees with the Defendants that "maintaining employee accountability in working their assigned hours and ensuring the accuracy of time records when public funds are used to pay employees' (Plaintiffs') salaries" is a legitimate justification for this timekeeping purpose.[141] Because fingerprints are unique, fingerprinting also reasonably relates to the alleged purpose of accurate

---

[138] R. Doc. 33 at ¶ 33.
[139] *Id.*
[140] *Williams v. Berry*, 977 F. Supp. 2d 621, 634 (2013) (citing *Wyman v. James*, 400 U.S. 309, 319 (1971)).
[141] R. Doc. 42 at pp. 4–5.

timekeeping and thus was "reasonably related in scope to the circumstances which justified the interference in the first place."[142]   The intrusion undertaken by Defendants therefore satisfies the legitimate government interest in timekeeping and ensuring that public funds related to employee salaries are used for their intended purpose.  The fingerprinting policy was justified at its inception.

Plaintiffs resist this conclusion not by arguing that timekeeping is an illegitimate interest[143] but by contending that because less intrusive alternative timekeeping methods and procedures such as key cards, PINs, or traditional fire logs exist, the Defendants therefore should be required to use those other means. Plaintiffs assert that because Plaintiffs "have requested alternatives to violating their privacy rights as resolution to concerns to no avail," Defendants have abused their authority within the employment context.[144]   Plaintiffs cite to no caselaw suggesting that if the government can use less invasive means, the government must do so, likely because no such caselaw exists.  Indeed, the Supreme Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under

---

[142] *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968).

[143] At most, Plaintiffs argue that the Defendants' purported timekeeping rationale is, in part, pretextual.  Plaintiffs allege that the "intentional exclusion of certain parish fire employees lends doubt as to the efficacy of the purported 'timekeeping' reason as the only reason for the taking of biometric information."  R. Doc. 33 at ¶ 27.  While the Court accepts all well-pled factual allegations as true at this stage, the Court does not accept as true speculative and "naked assertions devoid of further factual enhancement" as to the Defendants' intentions.  *Verastique v. City of Dallas*, —F. 4th—, 2024 WL 3325881, at *2 (5th Cir. July 8, 2024) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023)). Plaintiffs have alleged that the purported purpose of the fingerprinting policy was for timekeeping purposes and have not presented anything else to contradict that allegation.  Moreover, whether the Defendants may have had other motives for fingerprinting besides timekeeping does not negate the legitimate timekeeping interest.

[144] R. Doc. 39 at pp. 13–16.

the Fourth Amendment."[145]  The Fourth Amendment requires only that searches and seizures be reasonable, not the most reasonable.[146]  It follows that the existence of less intrusive means of accomplishing the same end does not transform a reasonable search into an unreasonable one.  That the Defendants could have accomplished their goal of accurate timekeeping among Fire Department personnel through alternative means favored by the Plaintiffs is of no end.[147] Fingerprinting is reasonable under these circumstances.

While the fingerprinting in this case likely constituted a search under *Jones*, the search did not run afoul of the Fourth Amendment.  The scope of the particular intrusion and the manner in which it was collected in this case were minimal.  The timekeeping justification for the intrusion constitutes a legitimate work-related, noninvestigatory intrusion that satisfies the reasonableness standard in terms of its inception and scope.  Therefore, the fingerprinting of Plaintiffs was not an unreasonable search in violation of the Fourth Amendment.  Because the Plaintiffs cannot demonstrate an underlying constitutional violation, their § 1983 *Monell*

---

[145] *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995) (citing *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 629 n.9 (1989)).

[146] *See* U.S. Const. amend. IV (recognizing "the right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures"); *Skinner*, 489 U.S. at 629 n.9 (explaining that "because judges engaged in *post hoc* evaluations of government conduct 'can almost always imagine some alternative means by which the objectives of the [government] might have been accomplished,'" courts should not proscribe conduct which might have been conducted in a more reasonable manner (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985))).

[147] *See Illinois v. Lafayette*, 462 U.S. 640, 647 (1983) ("The reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means.").

claims against the Defendants necessarily fail.  Likewise, the Plaintiffs' Louisiana constitutional claims also fail.[148]

## IV.    CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED** that the 12(b)(6) Motion to Dismiss Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted[149] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' claims against the Defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, July 22, 2024.

**WENDY B. VITTER**
**United States District Judge**

---

[148] Neither party has suggested that Article I, Sec. 5 of the Louisiana Constitution provides any greater protection of individual privacy under these circumstances than that provided by the Fourth Amendment.  The Court notes that the Louisiana Supreme Court has favorably cited to *Skinner*, *see Richard v. Lafayette Fire & Police Civil Service Board*, 8 So.3d 509, 514 (La. 2009), suggesting that the general framework of *Skinner* would also apply to the allegations here*, see also Bryant v. City of Monroe*, 593 Fed. Appx. 291, 299 (5th Cir. 2014) ("We find nothing in *Richard* to suggest that Article I, § 5 of the Louisiana Constitution sets a higher standard than the Fourth Amendment to the United States Constitution with respect to suspicionless post-accident drug testing.").
[149] R. Doc. 36.